**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ROBERT ALY,

        Plaintiff,

        vs.                                            No. CIV 96-1481 JC/DJS

ROCKY MOUNTAIN HOLDING, L.L.C.,
d/b/a ROCKY MOUNTAIN HELICOPTERS,
and ROCKY MOUNTAIN HELICOPTERS, INC.;
KATHY DAVIS, former Director of Emergency
Services for University of New Mexico Hospital,
PENNY GRINER, former Chief Flight Nurse; and
EILEEN GRASS, former Chief Flight Nurse,
individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendants Rocky Mountain Holding, L.L.C. and Rocky Mountain Helicopters, Inc.'s Motion For Summary Judgment and For Judgment on the Pleadings, filed October 27, 1997 (Doc. No. 79), and Motion for Partial Summary Judgment or in the Alternative to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim, filed February 2, 1998 (Doc. No. 134). The Court also has before it Plaintiff's Motion for Leave to File a Second Amended Complaint, filed February 25, 1998 (Doc. No. 141). The Court has reviewed the motions, the

memoranda submitted by the parties, and the relevant authorities.  The Court has also been briefed by all parties on the pleading sufficiency of Plaintiff's 42 U.S.C. § 1983 claim.[1]

The Court finds that Defendants' Motion for Summary Judgment and For Judgment on the Pleadings (Doc. No. 79) is well taken in part, and will be granted in part.  The Court finds that Defendants' Motion for Partial Summary Judgment or in the Alternative to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim (Doc. No. 134) is not well taken and will be denied.  The Court finds that Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. No. 141) is not well taken and will be denied.  The Court finds that the individual Defendants' Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 (Doc. No. 121) is well taken in part, and will be granted in part.

**Procedural Background**

This case was initially filed on September 20, 1996, in New Mexico's Second Judicial District against Defendants Rocky Mountain Holding, L.L.C., and Rocky Mountain Helicopters, Inc. (The "Rocky Mountain" Defendants).  The initial state complaint contained three counts: (1) disparate treatment; (2) retaliatory discharge; and (3) prima facie tort.  All three counts were based on Plaintiff's alleged wrongful termination for raising safety concerns in connection with his job as a helicopter pilot.

On October 25, 1996, the Rocky Mountain Defendants removed the case to this Court based on diversity of citizenship.  Plaintiff subsequently submitted a Motion to Remand challenging

---

[1] The individual Defendants' brief is titled "Defendants' (Davis, Griner, and Glass) Brief in Support of Dismissal of Plaintiff's Claim Under § 1983."  This brief argues for dismissal of Plaintiff's § 1983 claim on three grounds:  (1) that Plaintiff has not sufficiently pled the elements of a conspiracy; (2) that Plaintiff's speech was not "protected speech"; and (3) that the individual Defendants are immune because Plaintiff's speech was not "clearly established" as a constitutional right.  (The individual Defendants initially raised the qualified immunity defense in their answer to Plaintiff's First Amended Complaint.)  Since these issues have been adequately briefed by all parties, I will treat the individual Defendants' brief as an actual Motion to Dismiss the § 1983 claim.

the amount in controversy requirement. Plaintiff's Motion to Remand was denied on December 10, 1996.

On September 26, 1997, Plaintiff was granted leave to file an amended complaint which he did on September 29, 1997. Plaintiff's First Amended Complaint (Doc. No. 71) named three new defendants to the lawsuit--Kathy Davis, Penny Griner, and Eileen Grass (the "individual Defendants"). All three of the new parties are former employees of the University of New Mexico Hospital ("UNMH"), and are residents of New Mexico. Plaintiff's Amended Complaint also omitted the prima facie tort claim and added a 42 U.S.C. § 1983 claim for Conspiracy to Violate Free Speech. (See Pl.'s First Amended Complaint at 8.)

Plaintiff's § 1983 claim--that the individually named Defendants conspired with the Rocky Mountain Defendants to violate his First Amendment rights--constitutes a federal question. See Hammond v. Bales, 843 F.2d 1320, 1323 (10th Cir. 1988); Gressley v. Deutsch, 890 F. Supp. 1474, 1484 (D. Wyo. 1994). Cf. Board of County Comm'rs v. Umbehr, 116 S. Ct. 2342, 2349 (1996) (First Amendment protects independent government contractors). Thus, the Court has jurisdiction under 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the two state law claims. See 28 U.S.C. § 1367(a).

**Factual Background**

Plaintiff worked as a helicopter pilot for Rocky Mountain. Rocky Mountain is the nation's largest provider of emergency helicopter transportation services. Defendant Kathy Davis is the former Director of Emergency Services for UNMH. Defendants Penny Griner and Eileen Grass are former flight nurses at UNMH.

During his employment with Rocky Mountain, Plaintiff flew the "Lifeguard One" helicopter at UNMH. Plaintiff also served as a safety officer for UNMH, and as chairman of a joint safety committee set up between Rocky Mountain and UNMH. Sometime in late 1993 or early 1994, UNMH sought to replace the helicopter being used as "Lifeguard One." UNMH had several models to choose from and ultimately chose the Aerospatiale Astar model 350B2 helicopter, a single-engine helicopter (the "B2"). Plaintiff did not agree with UNMH's decision.[2] He wanted UNMH to choose a twin-engine helicopter because he was concerned about the possibility of an engine failure in a single-engine aircraft. Plaintiff advised Rocky Mountain management, members of the flight crew, and UNMH personnel of his displeasure with the new B2 aircraft.

After delivery of the B2 helicopter, the aircraft experienced a series of on-the-ground engine lock-ups throughout 1994 and 1995. Plaintiff continued to voice his concerns about the danger of an in-flight engine failure. Mr. Aly contacted the Federal Aviation Administration ("FAA") about the engine lock-ups, and discussed them extensively with Rocky Mountain management. In August of 1995, Mr. Aly submitted a letter to Rocky management detailing his unanswered safety concerns.

In January 1996, Rocky Mountain put Plaintiff through a series of tests to determine his flight proficiency. Rocky Mountain claims Plaintiff failed these tests and was consequently terminated. Plaintiff claims the individual UNMH Defendants and Rocky Mountain conspired to terminate him for voicing his displeasure with the B2 aircraft and for continually raising safety concerns.

---

[2] Plaintiff was not appointed safety officer until after the B2 decision was made. (See Pl.'s Resp. Mot. Summ. J. at 12.)

**Analysis**

**I.  Legal Standards**

Summary judgment is appropriate "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 321-323 (1986). Once the movant has made such a showing, the "adverse party may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In reviewing a summary judgment motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, Frandsen v. Westinghouse Corp., 46 F.3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." Buchanan v. Sherrill, 51 F.3d 227, 228 (10th Cir. 1995). "Summary judgment is only appropriate if there is not sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250 (citations omitted).

Motions to dismiss on the other hand are viewed with disfavor and are therefore rarely granted.  5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357

(2d ed. 1990). The court may not grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief. See Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th Cir. 1995). Furthermore, courts must accept all well-plead allegations as true, id., and indulge all reasonable inferences in favor of the plaintiff. See Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1228 (10th Cir. 1987). "The issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." Schuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court will consider the individual Defendants' motion to dismiss in light of these standards.

**II.  Discussion**

**A.  State action under § 1983:**

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege two things: (1) that a person deprived him of a federal right; and (2) that the person did so acting "under color of state law." See Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995). The "under color of state law" requirement is a jurisdictional requirement under § 1983. Id. Because the Rocky Mountain Defendants have focused on this element in their Motion for Partial Summary Judgment or in the Alternative to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim, I find it an appropriate starting point for my legal analysis.[3]

---

[3] Rocky Mountain's Motion for Partial Summary Judgment or in the Alternative to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim (Doc. No. 134) is brought on three grounds: (1) that the individual Defendants' comments to Rocky Mountain were not spoken under color of state law; (2) that Plaintiff has failed to plead specific facts necessary to prove the existence of a conspiracy; and (3) that Rocky Mountain is not a state actor.

"[T]he only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)) (internal quotations omitted). I find that the individually-named Defendants in this case were all acting under color of state law when they allegedly conspired to get Mr. Aly fired. Each of the individual Defendants was employed by University Hospital, a state-affiliated hospital, and each of the Defendants was interacting with Rocky Mountain as a representative of UNMH when they allegedly conspired. The contract between Rocky Mountain and UNMH strengthens this conclusion because the contract purportedly authorized hospital representatives (i.e., state actors) to approve or disapprove of the individual helicopter pilots. The individual Defendants, as hospital representatives, were clothed with the authority of state law--that is what gave them the power to allegedly fire Mr. Aly. In a nutshell, the individual Defendants were exercising power "possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law." (See Defs.' Resp. P. Supp. Summ. J. at 3 (citing Jojola, 55 F.3d at 492-93).)

The question of whether Rocky Mountain's actions were taken under color of state law is a closer and more difficult question. See Lebron v. National R.R. Passenger Corp, 513 U.S. 374, 378 (1985) ("It is fair to say that our cases deciding when private action might be deemed that of the state have not been a model of consistency."). The Supreme Court has taken a number of different approaches to the state actor/"under color of state law" question. (Under § 1983, state action is synonymous with "under color of state law." See George v. Pacific-CSC Work Furlough, 91

F.3d 1227, 1229 (9th Cir. 1996).)  These different approaches--taken as a whole--delineate what is and what is not state action.  See Gallagher, 49 F.3d 1442, 1447 (1995); George, 91 F.3d at 1230.

"Under the nexus test, a plaintiff must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be treated as that of the state itself."  Id., at 1448 (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)); see also Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir.1995).  "State action is also present [under the symbiotic relationship test] if the state has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity."  Id. at 1451 (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).  Under the "joint action" test, state action is "present if a private party is a willful participant in joint action with the State or its agents."  Id. at 1453 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)).  Finally, under the "public function" test, "[i]f the state delegates to a private party a function traditionally exclusively reserved to the state, then the private party is necessarily a state actor."  Id. at 1456 (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991)).

In this case, the state action requirement has been met vis-à-vis Rocky Mountain.  Rocky Mountain contracted with the hospital to provide helicopter transportation services; services that, though not "functions traditionally exclusively reserved to the state," were closely tied to the functioning of the hospital.  Cf. Rendell-Baker v. Kohn, 457 U.S. 830, 840-42 (1982) (fact that state and private entity enter contract does not, standing alone, establish state action).  Under the contract, the choice of helicopter to be flown was made by the hospital, and the pilots themselves were ostensibly chosen by the hospital. (See Rocky Mountain's Brief P. Summ. J. at 6.)  The allegation that the individual Defendants were impermissibly calling for Mr. Aly's termination was a power they

possessed as hospital representatives under the contract.[4] Cf. Frazier v. Board of Trustees, 765 F.2d 1278, 1288 (5th Cir. 1985) (county hospital employees not involved in decision to discharge plaintiff). Furthermore, Rocky Mountain and the hospital maintained a joint safety committee, of which Mr. Aly was chairman. Thus, there was a high degree of interdependence between Rocky Mountain and UNMH. Cf. Gallagher, 49 F.3d at 1448 ("mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the Fourteenth Amendment.") (quoting Rendell-Baker, 457 U.S. at 1004-05). When all these factors are taken together, it becomes apparent that Rocky Mountain was acting under color of state law. The hospital, nurses and Director of Emergency Services were providing more than mere feedback to Rocky Mountain. (See Defs.' Br. Supp. P. Summ. J. at 7.) The state was an affirmative part of Plaintiff's employment. (See id. at 8.) Consequently, Defendants' Motion for Partial Summary Judgment or in the Alternative to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim will be denied.

**B. Mechanics of a First Amendment claim:**

Determining whether Plaintiff's First Amendment rights have been violated by Rocky Mountain and the individually-named Defendants requires a two-step analysis. First, I must determine if Mr. Aly's alleged speech touched on a matter of public concern. Patrick v. Miller, 953 F.2d 1240, 1246 (10th Cir. 1992). Second, I must go through the Pickering balancing test to determine if "the interests of the employee, as a citizen, in commenting upon matters of public concern [outweigh] the interest of the State, as an employer, in promoting the efficiency of the public services it performs

---

[4] I find that Plaintiff's First Amended Complaint, taken as a whole, sufficiently pleads the underlying conspiracy. (See First Am. Comp. ¶¶ 23, 24, 28, 29, 42, 44, 45, 54, 57, and 60.)

through its employees." Patrick, 953 F.2d at 1246 (quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)).

Plaintiff has identified two separate items of speech he claims were matters of public concern. (See Pl.'s Br. M. on § 1983 at 5; Pl.'s Resp. M. Summ. J. at 12-16.) The first is his continued complaints about UNMH's choice to fly a single-engine helicopter. The second is Plaintiff's complaints to Rocky Mountain, the FAA and UNMH personnel about the B2 helicopter's engine lock-ups.

"Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community," Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996), "in contrast to speech as an employee upon matters only of personal interest." Considine v. Board of County Comm's, 910 F.2d 695, 699 (10th Cir. 1990) (quoting Connick v. Myers, 461 U.S. 138, 147 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." Id. Speech involving disputes over working conditions or personnel issues is usually not a matter of public concern. See Gardetto, 100 F.3d at 812 (quoting Conaway v. Smith, 853 F.2d 789, 796 (1988)). However, "speech that seeks to expose improper operation of the government or questions the integrity of governmental officials clearly concerns vital public interests." Id.

I find that Plaintiff's complaints over UNMH's choice of the single-engine B2 aircraft are not a matter of public concern. Although a twin-engine aircraft may conceivably be safer than a single-engine aircraft, this determination is something UNMH made in its overall helicopter cost benefit analysis. Hypothetically, a four-engine aircraft with armor plating and parachutes would be better

than a twin-engine helicopter. Going with the twin-engine helicopter in this case would have precluded the Lifeguard One program at UNMH. Although two engines may be better, government regulators and society allow these single-engine helicopters to fly. Basically, aviators have to fly the aircraft their employer provides for them or seek employment elsewhere. The fact that Plaintiff was chairman of the safety committee does not elevate his speech to a matter of public concern. Once the B2 decision was made, Plaintiff ran the risk of irritating his employer and UNMH with his continued complaints about the helicopter. Of course, aviators are not expected to fly defective aircraft, which leads to Plaintiff's second item of speech.

I find that Plaintiff's complaints regarding the B2 engine lock-ups are a matter of public concern. See Considine, 910 F.2d at 700 (finding statements identifying public health and safety violations on county projects to be matters of public concern) (citing Conaway v. Smith, 853 F.2d 789, 791 (1988) (electrical inspector's comments regarding failed inspections matter of public concern) and Schalk v. Gallemore, 906 F.2d 491 (10th Cir. 1990) (hospital accounts clerk's identification of waste and inefficiency matter of public concern)). A faulty aircraft poses a tremendous safety risk to the aircraft's passengers and crew, as well as to others on the ground. Plaintiff's appeals to Rocky Mountain management, the hospital and the FAA indicate he was trying to expose the alleged safety problem.

Having found part of Plaintiff's speech to be a matter of public concern, I must now determine if his interest in making the statements outweighed the interest of Defendants in "promoting the efficiency of the public services it perform[ed] through its employees." Considine, 910 F.2d at 700-01 (quoting Rankin v. McPherson, 483 U.S. 378 (1987). "Under the Pickering balancing test, the employee's First Amendment free speech rights are protected unless the employer shows that some

restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." Gardetto, 100 F.3d at 815. Defendants have not shown how Plaintiff's statements disrupted the work place. Rocky Mountain maintains that Plaintiff was fired because he failed a battery of flight tests. Although it sounds as if Plaintiff was irritating Rocky Mountain and UNMH with his B2 safety concerns, mere irritation is not enough. I find that the Pickering balance weighs in favor of the speech in this case.

**C. Qualified immunity:**

I find that Plaintiff has met the heightened pleading requirement for his § 1983 claim. Plaintiff has made sufficient factual allegations defining his speech such that the Pickering balance can be performed. In other words, the individual Defendants have been able to sufficiently formulate a qualified immunity defense.

As previously laid out, Plaintiff's speech regarding the B2's engine lock-ups was protected speech. I further find that Plaintiff's speech on the engine lock-ups was "clearly established." Although the fact-specific nature of the Pickering balancing test makes it more difficult for speech issues to be "clearly established" for qualified immunity purposes, Patrick, 953 F.2d at 1246, in this case the Pickering balance weighs heavily in favor of Plaintiff. Plaintiff's concern, as a citizen, about the B2's engine lock-ups was clearly, as explained above, a matter of public concern. If Plaintiff's allegations are true, the individual Defendants' conduct was unreasonable. Therefore, the individual Defendants' Motion to Dismiss the § 1983 claim will only be granted in part. Plaintiff's § 1983 claim as to his complaints about the B2 engine lock-ups will remain, and his § 1983 claim as to the single engine complaints will be dismissed for failure to state a claim.

**D. State law claims:**

In addition to the § 1983 claim, Plaintiff's First Amended Complaint contains two state law claims.[5] Plaintiff's first claim is titled "disparate treatment." Rocky Mountain moves for a judgment on the pleadings on this claim, arguing disparate treatment is a Title VII concept which requires an allegation of discrimination based on race, color, religion, sex or national origin. Rocky Mountain argues further that there is no generic common law disparate treatment tort. Plaintiff did not address these arguments in his response. I agree with both of Rocky Mountain's arguments. None of the Title VII categories have been implicated in this case, and there is no blanket cause of action for disparate treatment. Consequently, Plaintiff's claim for "disparate treatment" will be dismissed.

Plaintiff's second state law claim is for retaliatory discharge. Rocky Mountain moves for summary judgment on this claim arguing that Plaintiff's claim is not one of the types of retaliatory discharge actions recognized in New Mexico. Rocky Mountain argues alternatively that even if Plaintiff's allegations are covered under New Mexico's retaliatory discharge tort, his evidence is insufficient to establish a pretextual termination.

Although New Mexico is an employment at-will state, New Mexico recognizes a limited exception for retaliatory discharge against public policy. See Garrity v. Overland Sheepskin Co., 121 N.M. 710, 714 (1996); Shovelin v. Central New Mexico Elec. Coop., Inc., 115 N.M. 293, 303 (1993). As I have previously laid out, Plaintiff's speech about the B2's engine lock-ups was a matter of public concern. If Plaintiff was discharged for speaking out on the engine lock-ups, his discharge was wrongful. The potential danger to the public, flight crew, and passengers of Lifeguard One

---

[5] Plaintiff's First Complaint included a claim for prima facie tort. Plaintiff, however, did not include this claim in his amended complaint.

makes the speech a matter of public concern.  See Gutierrez v. Sundancer Indian Jewelry, Inc., 117 N.M. 41, 47 (1994) (retaliatory discharge claim allowed for employee terminated after reporting unsafe working conditions).  I find that Plaintiff has sufficiently countered Rocky Mountain's proffered legitimate non-retaliatory reason for discharge.  Although I view Plaintiff's claim with skepticism, Plaintiff has proffered just enough evidence to raise a genuine issue of material fact as to why he was actually fired.[6]  (E.g. Pl.'s Resp. M. Summ. J. Ex. 5 at 185; Ex. 14 at 89-90; Ex. 32 at 31-32; Ex. 33 at 69-72, 80, 100-03; Ex. 37; Ex. 39, Ex. 41, and Ex. 42.)  Plaintiff is forewarned that the issue of increased safety with multiple engines has been resolved against him.  The "desirability of a second engine" debate will not come up at trial.

**E.  Plaintiff's Motion to file a Second Amended Complaint**

Plaintiff seeks to add a spoilation of evidence claim in his Motion for Leave to File a Second Amended Complaint (Doc. No. 141).  Plaintiff bases his motion on evidence he has requested in discovery and Defendants have been unable to produce.  Plaintiff also highlights some minor inconsistencies in Defendants' statements regarding the discovery items.  I find that Plaintiff's motion is untimely.  Plaintiff has known of the following missing evidence since April 1997:  (1) the ground school quiz sheets completed by other Rocky Mountain pilots; (2) documents pertaining to Mr. Aly's transfer to Tucson; (3) Rocky Mountain telephone records prior to 1996; (4) Rocky Mountain e-mail files prior to the summer of 1996; and (5) copies of the test questions given to Mr. Aly in 1995.[7]  Because this missing evidence constitutes the bulk of Plaintiff's claim, Plaintiff should have included

---

[6] Contrary to Rocky's assertion, (Defs. Br. Supp. Sum. J. at 13.), Plaintiff did report the engine lock-ups to public officials--namely the FAA. (See Pl.'s Resp. M. Summ. J. Ex. 6 at 161.)

[7] The other two pieces of missing evidence are Malcolm Symons' personnel file, which has now been produced, (Defs.' Resp. at 9), and Kathleen Davis' March 21, 1994 letter, which simply appears to be missing.

the claim in his Motion for Leave to File a First Amended Complaint (Doc. No. 59), filed on September 9, 1997. At this juncture we are too close to trial for another amendment, especially when the underlying basis for the claim was known prior to a previous amendment. Consequently, Plaintiff's Motion for Leave to File a Second Amended Complaint will be denied.

Wherefore,

IT IS HEREBY ORDERED as follows:

1. Defendants Rocky Mountain Holding, L.L.C. and Rocky Mountain Helicopters, Inc.'s Motion For Summary Judgment and For Judgment on the Pleadings, filed October 27, 1997 (Doc. No. 79) is **granted in part**. Plaintiff's state claim for "disparate treatment" is dismissed, and his state claim for retaliatory discharge is limited to Plaintiff's complaints about the B2 engine lock-ups.

2. Defendants Rocky Mountain Holding, L.L.C. and Rocky Mountain Helicopters, Inc.'s Motion for Partial Summary Judgment or in the Alternative to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim, on the basis that Defendants were not state actors, filed February 2, 1998 (Doc. No. 134), is **denied**.

3. The individual Defendants' motion to dismiss Plaintiff's 42 U.S.C. § 1983 (Doc. No. 121) is well taken in part, and will be **granted in part**. Plaintiff's § 1983 claim is limited to Plaintiff's complaints about the B2's engine lock-ups. In all other respects, it is denied.

4. Plaintiff's Motion for Leave to File a Second Amended Complaint, filed February 25, 1998 (Doc. No. 141) is **denied**.

DATED this 2nd day of April, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Eric Scott Jeffries |
| | Ripley B. Harwood |
| | Jeffries & Rugge, P. C. |
| | Albuquerque, New Mexico |
| Counsel for Defendants: | Scott D. Gordon |
| | Amy E. Badger |
| | Rodey, Dickason, Sloan, Akin & Robb, P. A. |
| | Albuquerque, New Mexico |
| | |
| | Paul R. Ritzma |
| | Paul M. Schneider |
| | NM Legal Bureau/RMD |
| | Santa Fe, New Mexico |